NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EFRAM SCHNEIDER, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> JO ANNE B. BARNHART, as : <br> COMMISSIONER OF SOCIAL : <br> SECURITY, : <br> : <br> Defendant. : | Civ. No. 05-2584 (AET) <br><br> MEMORANDUM OPINION |

THOMPSON, U.S.D.J.

I.  Introduction

This matter is before the Court on Plaintiff Efram Schneider's appeal of a final administrative decision by Defendant Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for Social Security Disability Insurance ("SSDI") benefits. The Court has jurisdiction to decide this matter pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the decision of the Commissioner is affirmed.

II.  Background

    A.  Plaintiff's Work and Medical History

Plaintiff is currently thirty-eight years old. Plaintiff earned a degree in accounting from Touro College in 1990. He was employed as an assistant controller at New York Restaurant Group from 1989 until 1994, at A.J. Hollander from 1994 until 1996, at MAPS from 1996 until

1997, at J&S DeYoung from 1997 until 2001, and finally at S.H. Molinari from 2001 until 2002. (R. at 222.)

On December 15, 1999, Plaintiff was injured in a motor vehicle accident while he was a passenger on a New Jersey Transit bus. (R. at 13; Pl.'s Br. 3.) After the accident, Plaintiff complained of neck pain radiating to the left arm, associated numbness, and low back pain. (R. at 13.) An MRI of Plaintiff's cervical spine was conducted on March 23, 2000. It revealed that Plaintiff had a "large disc herniation at C4/5 with significant compression of the spinal cord." (R. at 13.) Plaintiff also had "neuroforaminal stenosis on the left at C5/6." (R. at 13.) An MRI of Plaintiff's lumbar spine was also conducted, and revealed a "central disc herniation at L5/S1." (R. at 13.)

On June 20, 2000, Dr. Jeffrey Klein performed the following procedures on Plaintiff to address the conditions revealed by the MRIs, including (1) anterior cervical diskectomy and decompression of the spinal cord at C4/5 and C5/6, (2) anterior cervical interbody fusion at C5/6, and (3) placement of spinal instrumentation. (R. at 255-58.) As Plaintiff and his attorney explained, essentially, Dr. Klein took out two cervical disks from Plaintiff's neck, fused two disks, and put in spinal instrumention. (R. at 305.) On March 19, 2002, Dr. Klein performed additional surgery on Plaintiff, including (1) removal of the prior cervical anterior segmental spinal instrumentation, (2) partial osteotomy of the C5/6 fusion with revision fusing, (3) revision of the C5/6 interbody fusion, (4) anterior cervical diskectomy and decompression at C3/4, (5) anterior cervical interbody fusion at C3/4, and (6) anterior cervical plating at C3, C4, C5, and C6. (R. at 111-17.) Plaintiff and his attorney described this surgery as involving the insertion of new hardware, leaving four plates and sixteen screws in his cervical spine. (R. at 307.) After this

surgery, Plaintiff was able to move his neck "a little better" but complained of residual pain and loss of motion in his neck. (R. at 311.)

While Plaintiff was recuperating from his March 19, 2002 surgery, he was terminated from his job at S.H. Molinari. After Plaintiff filed his application for SSDI benefits, he was examined at the request of the Social Security Administration by Dr. Rashel Potashnik on December 9, 2002. (R. at 13.) Dr. Potashnik reported that Plaintiff said that some of his neck pain had gone away after the surgeries, but that he still experienced restricted movement and was unable to hold his neck up longer than five to ten minutes due to soreness. Plaintiff complained of pain and numbness in his hands and fingers, constant lower back pain, stiffness, numbness in his thighs while sitting, and pain in his knees while climbing stairs. Plaintiff reported that he had been prescribed medication and physical therapy. Dr. Potashnik noted that Plaintiff was in "no acute distress," could walk without the straight cane that had been prescribed, "was independent with dressing, undressing, mounting and dismounting the examination table," and was able to squat, but had a hard time getting up. (R. at 205-07.) Dr. Potashnik found that Plaintiff's cervical range of motion was decreased in all planes, but that Plaintiff's muscle strength was normal. (R. at 13, 205.)

An MRI of Plaintiff's lumbar spine was taken on September 11, 2002. (R. at 121.) At the L5-S1 level, the MRI report revealed a "evidence for probable impingement of the left S1 nerve root sleeve" stemming from "a broad-based posterolateral disc protrusion which is eccentric to the left side." It also found "mild lateral recess stenosis" and also "[m]ild central spinal stenosis," but noted that "the thecal sac is already tapered at this level." At the L4-5 level, the report noted "mild central and lateral recess stenosis." At the L3-4 level, the report noted

"very mild central stenosis, which . . . appears to be on a congenital basis." (R. at 122.) The report compared these results to an earlier MRI taken on April 11, 2001, and found that the "mild congenital narrowing of the canal at the L3-4, L4-5 and L5-S1 levels" was unchanged. (R. at 122.)

Plaintiff was given therapy at Health South from July 22, 2002 until November 22, 2002. (R. at 125.) When Plaintiff completed his therapy, his prognosis was fair. (R. at 202.) Plaintiff was scheduled for an orthopedic consultative examination on August 31, 2004, but cancelled his appointment because he had moved to Israel. (R. at 299.)

B.   Procedural History

Plaintiff filed an application for SSDI benefits on August 7, 2002, alleging that he became disabled on March 19, 2002 after undergoing surgery. (R. at 44.) Plaintiff's application was denied initially on January 8, 2003, and again upon reconsideration on June 17, 2003. (R. at 21, 28.) Plaintiff requested a hearing, which was held on July 28, 2004 before the Administrative Law Judge (the "ALJ"). (R. at 300-23.)

The ALJ issued an unfavorable decision on October 5, 2004. (R. at 12-17.) On November 18, 2004, Plaintiff requested a review of the ALJ's decision (R. at 7.) The Appeals Council of the Social Security Administration denied the request for review on April 13, 2005. (R. at 4-6.) As a result, the ALJ's decision became the Commissioner's final decision. Having exhausted his administrative remedies, Plaintiff timely filed an appeal before this Court on May 18, 2005.

III.   Applicable Law

A.   Standard of Review

A district court has plenary review of the Commissioner's application of the law, and reviews the Commissioner's findings of fact to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). A court is required to review the entire record when making those determinations. Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003); see 5 U.S.C. § 706.

A court must affirm the Commissioner's decision if there is substantial evidence supporting it. 42 U.S.C. § 405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The Commissioner's decision is afforded a great amount of deference; a court should not "set the . . . decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

B.   The Commissioner's Analysis for an Award of Disability Benefits

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The Social Security Administration has promulgated a five-step evaluation to determine

whether an individual is disabled.  See 20 C.F.R. § 404.1520; see generally Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  In step one, the Commissioner decides whether the claimant is currently engaging in substantial gainful activity.  If so, the claimant is not eligible for disability benefits.  20 C.F.R. § 404.1520(a)(4).  In step two, the Commissioner determines whether the claimant is suffering from a severe impairment.  If the impairment is not "severe," the claimant is not eligible for disability benefits.  20 C.F.R. § 404.1520(c).  If the Commissioner finds that the claimant has a "severe" impairment in step two, then the analysis continues under step three.  20 C.F.R. § 404.1520(a)(4).  In step three, the Commissioner determines whether the medical evidence indicates that the impairment is equivalent to an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1.  If so, the claimant is automatically eligible for benefits.

If the Commissioner finds that the impairment does not match one of the listed impairments, then the analysis continues under step four.  In step four, the Commissioner reviews whether the claimant retains the "residual functional capacity" to perform his past relevant work.  "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Hartranft, 181 F.3d at 359 n.1 (citing 20 C.F.R. § 404.1545(a)).  If a claimant can perform his past relevant work, he is not eligible for disability benefits.  20 C.F.R. § 404.1520(f).  Finally, in step five, the Commissioner considers whether other work "exist[s] in significant numbers in the national economy that the claimant can perform given his age, education, past work experience, and residual functional capacity."  Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002) (citing Plummer, 186 F.3d at 428).  If there is such work, the claimant is not eligible for benefits.  20 C.F.R. § 404.1520(g).  In this final step, "the burden of production shifts to the Commissioner, who must demonstrate that the claimant is

capable of performing other available work in order to deny a claim of disability." <u>Plummer</u>, 186 F.3d at 428.

IV.   Discussion

The ALJ found that Plaintiff met steps one and two of the five-step evaluation, because he had not been engaged in substantial gainful activity since March 19, 2002, and because his impairment, involving disorders of the neck and lower back, was severe. The ALJ found that Plaintiff's impairment did not meet listing level severity under step three of the evaluation. The ALJ explained that the requirements of Listing 1.04 were not met because "the evidence does not demonstrate 'herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertabral fracture . . . resulting in [the] compromise of a nerve root . . . or the spinal cord' along with the requirements in subsections A, B, or C." (R. at 15.)

Because step three was not met, the ALJ then moved on to step four, and considered whether Plaintiff's impairment prevented him from doing his past relevant work. The ALJ determined that Plaintiff could perform a full range of light work, and that Plaintiff could perform his past relevant work as a controller. (R. at 16.) In making his determination on this step, the ALJ found that Plaintiff's subjective complaints of disabling pain and other symptoms and limitations were not fully credible. (R. at 14.) He found that "[a]lthough the assertions of pain are reasonable to a degree, the overall record does not support them to the debilitating extent asserted." He also noted that questions as to Plaintiff's condition could not be resolved because Plaintiff did not show up for an orthopedic consultative examination on August 31, 2004. Because the ALJ found that Plaintiff could perform his past relevant work under step four of the

evaluation, he did not consider step five. As a result, the ALJ found that Plaintiff did not have a disability, as defined under the Social Security Act, and did not award disability benefits.

Plaintiff now appeals and argues that the ALJ's decision is not supported by substantial evidence. Plaintiff only takes issue with the ALJ's finding at step three, and contends that evidence submitted shows that Plaintiff meets the criteria in Listing 1.04. As the Commissioner has adopted the ALJ's decision as her final determination, the Court will review that decision.

  A.  Step Three: Equivalence to an Impairment Listed in Appendix 1

Under the regulations, Plaintiff is automatically eligible for benefits if the severity of his impairment is equivalent to one of the listings in Appendix 1. See 20 C.F.R. § 404.1520(a)(4). It is Plaintiff's burden to establish that his impairment meets the criteria of the listing. Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005). In his brief, Plaintiff contends that his impairment meets the criteria of Listing 1.04, which provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
> B. Spinal archnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

>> or
>> C.  Lumbar spinal stenosis resulting in pseudoclaudication,
>> established by findings on appropriate medically acceptable
>> imaging, manifested by chronic nonradicular pain and weakness,
>> and resulting in inability to ambulate effectively, as defined in
>> 1.00B2b.

20 C.F.R. Part 404, Subpt. P, App. 1, Listing 1.04.  Specifically, Plaintiff points to the part of the listing describing a "herniated nucleus pulposis" as an qualifying impairment when it results in a "compromise of a nerve root or the spinal cord and there is evidence of nerve root compression" under Listing 1.04A.  (Pl.'s Br. 10.)  Plaintiff contends that the March 23, 2000 MRI demonstrates that his impairment meets the criteria because it indicates a "prominent central focal disc herniation which caused significant compression of the spinal cord." (Pl.'s Br. 10.) Plaintiff also notes that the September 11, 2002 MRI revealed "bilateral recess stenosis and disc herniation at L5-S1 impinging on [the] left S1 nerve root." (Pl.'s Br. 11.)  Additionally, Plaintiff argues that the ALJ did not properly consider evidence of Plaintiff's subjective complaints.

     Upon a review of the record, the Court finds that the ALJ's determination was supported by substantial evidence.  The Court notes that Plaintiff must show that his impairment meets "<u>all</u> of the criteria for the . . . most similar listed impairment." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990).  Under Listing 1.04A, Plaintiff not only needs to show that there is a disorder of the spine that compromises the nerve root or spinal cord, but must also show evidence of nerve root compression.  The only evidence of nerve root compression was in the lumbar area, and was documented in the September 11, 2002 MRI as "evidence for probable impingement of the left S1 nerve root sleeve." (R. at 121.)  Where the lower back is involved, however, Plaintiff must also show a "positive straight-leg rising test" to have a qualifying impairment.  Dr. Potashnik's report, however, indicates that this test was negative for both supine and sitting positions.  (R. at

209.)  Thus, Plaintiff cannot show that his impairment meets Listing 1.04A.

Under Listing 1.04C, Plaintiff not only must show that there was lumbar spinal stenosis resulting in pseudoclaudication, as shown by chronic nonradicular pain and weakness, but must also show an inability to ambulate effectively.  Inability to ambulate effectively means "extreme limitation of the ability to walk, . . . defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  20 C.F.R. Part 404, Subpart P, App. 1, Listing 1.00B2b(1).  The record indicates that Plaintiff has only shown evidence that Plaintiff was prescribed a single straight cane, which would limit only one upper extremity.  (R. at 209.)  Furthermore, the record indicates that Plaintiff can "sustain[] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," 20 C.F.R. Part 404, Subpart P, App. 1, Listing 1.00B2b(2), as he can drive his car locally and be independent with self-care activities.  (R. at 205-09.)

Plaintiff contends that the ALJ should have considered evidence of Plaintiff's subjective complaints at step three of the analysis.  Although an ALJ should give serious consideration to a claimant's subjective complaints of pain, Smith v. California, 637 F.2d 968, 972 (3d Cir. 1981), he or she is "entitled to draw his own conclusions as to the veracity of the complaints" based on the evidence in the record.  Hartranft, 181 F.3d at 362.  The subjective complaints by themselves cannot constitute disability.  Green v. Schweiker, 749 F.2d 1066, 1070 (3d Cir. 1984).  The ALJ in this case fully considered Plaintiff's subjective complaints and weighed them against the medical and non-medical evidence in the record to make his credibility determination.  (R. at 14.)  Accordingly, this Court finds that the ALJ's credibility decision was supported by substantial

evidence, and that the ALJ properly considered Plaintiff's subjective complaints in his analysis. Because Plaintiff does not contest the ALJ's decision at step four, the Court will not address whether the ALJ properly considered Plaintiff's subjective complaints when he found that Plaintiff could engage in a RFC of a full range of light work.

IV.   Conclusion

      For the above-mentioned reasons, the Court affirms the Commissioner's determination. An appropriate order is filed herewith.

                                        s/Anne E. Thompson
                                        ANNE E. THOMPSON, U.S.D.J.

Dated: 7/5/06